UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

WEI WANG, GUANGYI XIONG,
XIAOFENG FENG, and STEPHEN
WEBSTER,

    Plaintiffs,

v.                                                         Case No: 2:19-cv-274-FtM-38UAM

SHEN JIANMING and SHENLAW, LLC,

    Defendants.

## REPORT AND RECOMMENDATION

**TO THE UNITED STATES DISTRICT COURT**

This cause is before the Court on numerous related filings: non-party Nicholas M. Hulme's Motion to Quash Subpoena for Deposition and for Protective Order, and, in the Alternative, Motion to Transfer (Doc. 1) filed on March 21, 2019; non-party Nicholas M. Hulme's Motion to Stay Deposition Duces Tecum (Doc. 2) filed on March 28, 2019; non-party Nicholas M. Hulme's Composite Motion to Quash Subpoena for Deposition Duces Tecum and for Protective Order, Motion to Stay, and, in the Alternative, Motion to Transfer Subpoena-related Motion (Doc. 3); Plaintiffs' Motion in Opposition to Nicholas Hulme's Motion to Quash Subpoena for Deposition and for Protective Order and, in the Alternative, to Transfer Subpoena Related Motion (Doc. 4) filed on April 12, 2019; and Plaintiffs' Opposition to Nicholas Hulme's Motion to Quash Subpoena for Deposition and for Protective Order, and Plaintiffs' Joint Motion to Transfer Subpoena Related Motion (Doc. 9) filed on April 25, 2019.  For the reasons explained below, the undersigned respectfully recommends that the subpoena-related motions be transferred to the United States District Court for the District of Vermont.

**I.     Background**

The instant motions relate to subpoenas issued by the United States District Court for the District of Vermont in the case *Wei Wang, Guangyi Xiong, and Xiaofeng Feng v. Shen Jianming and ShenLaw LLC*, case number 2:17-153.

The following summary of the background in this case is taken from Plaintiffs' Opposition to Nicholas Hulme's Motion to Quash Subpoena for Deposition and for Protective Order, and Plaintiffs' Joint Motion to Transfer Subpoena Related Motion (Doc. 9).

Plaintiffs provide that the underlying litigation is a complicated matter, involving a decade-long Ponzi-scheme at Jay Peak Projects in northern Vermont. Plaintiffs provide that the litigation involves direct claims by immigrant-investors against their attorneys and pending proposed class action claims (with motions to amend and opposition thereto) currently before the United States District Court for the District of Vermont (before the Honorable Judge Christina Reiss).

According to Plaintiffs, while the Jay Peak Projects started out as a set of investment raises to develop a ski and golf resort (known and marketed as "Jay Peak"), over time, the investment raises grew into the development of a neighboring resort ("Burke Mountain") and a bio-technology endeavor, dubbed "Anc-Bio." These investment raises were accomplished through a United States Customs and Immigration Service ("USCIS") program known as the "EB-5" program; through which, foreign investors apply for permanent residency in the United States, provided that they invest in a qualifying securities based project that creates a requisite number of jobs. All in all, 890 immigrant investors were placed into the various Jay Peak Projects. The Jay Peak Project's EB-5 raises were broken down into seven projects, known as "Phase 1," "Phase 2," "Phase 3," etc. (Complaint at 7-9, ¶ 26; 34-35, ¶ 44). The following Plaintiffs were investors in Phase VII: Wei Wang, Guangyi Xiong, and Xiafeng Feng. Plaintiff Stephen Webster was a Phase V investor.

Plaintiffs contend that in April 2016, the United States Securities and Exchange Commission (the "SEC") filed a securities fraud lawsuit (the "SEC Complaint") against Jay Peak Project's principal developers, Ariel Quiros and William Stenger, revealing a decade-long Ponzi-scheme that began with the very first investment raise at Jay Peak and continuing to its ultimate conclusion (a conclusion that resulted in hundreds of investors losing their investment and being forced back to their home countries).

Plaintiffs provide that the Complaint asserts causes of actions against the attorneys who represented these EB-5 investors, and that, in general, the causes of action can be broken down into three basic categories: 1) the attorneys ignored (and concealed) clear warning signs that, if revealed, would have prevented their client's from having their $500,000.00 investment (and $50,000.00 administrative fee) stolen by and for the Ponzi-scheme; and 2) the attorneys breached their most basic duty of care and facilitated the Ponzi-scheme by accepting money from the Jay Peak Projects and representing their clients at the same time (Complaint at 40-43, paras. 74-86). Plaintiffs contend that they know that the proposed-defendant-class accepted 4.6 million from the Jay Peak Projects (Complaint at 40, paras. 76). Plaintiffs allege that misappropriated funds and lucrative payments to third-parties became the hallmark of the ongoing project shortfalls and the need for ever more investment raises to fill the hole left by previously misappropriated funds. (Complaint at 40-41, paras. 74-82). Further, Plaintiffs contend that while the investors' money was supposed to be used for building resort infrastructure and creating jobs (as outlined in the investor's offering documents), it was actually used as a till of "free money" to those in a position to access and exploit it. (Complaint at 37-38, paras. 54-57). The named/lead Defendant, Attorney Jianming Shen, received 1.2 million dollars from Jay Peak in three years (in addition to the money he received from his clients). (*See* Complaint at 39, para. 60). The circumstances of these payments

are central to both the Plaintiffs' case as well as the asserted defenses of the Defendants. (*See* Complaint at 42, para. 83). Plaintiff contends that equally important are the clear warning signs that the attorneys ignored (hand-in-hand with accepting money from the Jay Peak Projects), and which ultimately doomed their clients' EB-5 endeavors. (Complaint at 42, paras. 83-84).

Plaintiffs contend that Nicholas Hulme, the principal employee of Rapid USA Visas, is a direct witness with information relevant to the underlying litigation. Plaintiffs issued two subpoenas duces tecum to Mr. Hulme, which are the subjects of the current pending motions.

## II.     Transfer of Subpoena-related Motions

In this case, Mr. Hulme indicates that he is amenable to the subpoena-related motions being transferred to the District Court of Vermont. In his motions, after arguing that Plaintiffs' subpoenas should be quashed and that protective orders be entered, he alternatively "requests and consents that the matter be transferred to the District Court of Vermont, so it can be fully briefed and argued in the District of Vermont, because this Case concerns matters that have been ongoing for almost a decade, involves Vermont state agencies and federal agencies located in Vermont, concerns actions of United States senators and congressmen representing Vermont, relates to property and investments in Vermont, and the District of Vermont federal court is intimately familiar with the underlying facts and litigants." (Doc. 1 p. 8). *See also* (Doc. 3 p. 5). Plaintiffs are not opposed to Mr. Hulme's but represent that "Plaintiffs' counsel leaves it to the Court's discretion as to the appropriate forum for decisions on these motions." (Doc. 9 p. 18).

Rule 45(f) of the Federal Rules of Civil Procedure provides that "when the court where compliance is required did not issue the subpoena, it may transfer a motion under this rule to the issuing court if the person subject to the subpoena consents or if the court finds exceptional circumstances."

Given Mr. Hulme's consent and the Plaintiffs' non-opposition, the Court finds it appropriate for the subpoena-related motions in this case to be transferred to the United States District Court for the District of Vermont.  Furthermore, the factors courts consider in transferring a case under Rule 45(f) militate in favor of transfer.  These factors include the complexity, procedural posture, duration of pendency, and the nature of the issues pending before, or already resolved by, the issuing court in the underlying litigation. *See The Dispatch Printing Co. v. Zuckerman*, 2016 WL 335753, at *2 (S.D. Fla. Jan. 27, 2016).  Accordingly,

**IT IS RESPECTFULLY RECOMMENDED THAT:**

non-party Nicholas M. Hulme's Motion to Quash Subpoena for Deposition and for Protective Order, and, in the Alternative, Motion to Transfer (Doc. 1); Motion to Stay Deposition Duces Tecum (Doc. 2); and Composite Motion to Quash Subpoena for Deposition Duces Tecum and for Protective Order, Motion to Stay, and, in the Alternative, Motion to Transfer Subpoena-related Motion (Doc. 3) be transferred to the United States District Court for the District of Vermont pursuant to Fed. R. Civ. P. 45(f).

**Respectfully recommended** in Fort Myers, Florida on May 10, 2019.

_____
DOUGLAS N. FRAZIER
UNITED STATES MAGISTRATE JUDGE

## **NOTICE TO PARTIES**

Failure to file and serve written objections to the proposed findings and recommendations contained in this report within fourteen (14) days from the date it is served on the parties shall bar an aggrieved party from a de novo determination by the District Court of issues covered in the report, and shall bar the party from attacking on appeal factual findings in the report accepted or adopted on appeal by the District Court except upon grounds of plain error or manifest injustice. 28 U.S.C. § 636(b)(1)(C); Local Rule 6.02

Copies furnished to:

Counsel of Record
Unrepresented Parties